# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

**MAURICE PARRISH,**

      **Petitioner,**

**v.**                                            **Case No. 5:22-cv-00134**

**WARDEN HECKARD,**[1]

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Currently pending is Petitioner Maurice Parrish's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), and Respondent's request for dismissal as articulated in her response to the Court's order to show cause, (ECF No. 8). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed the record, the undersigned **FINDS** that Petitioner did not exhaust his administrative remedies and does not state a claim for relief under § 2241. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the request for dismissal; **DISMISS** the Petition for a Writ of

---

[1] Plaintiff named "Warden Hecknard" as Respondent, but Respondent identified herself in her response as Katina Heckard, Warden. (ECF No. 8 at 1). The Court substitutes the correct Respondent and amends the style of the case to reflect that change. Fed. R. Civ. P. 21; *see also Peerless Ins. Co. v. WEO Carpentry, LLC*, No. CV RDB-18-1040, 2019 WL 2374380, at *4 (D. Md. June 5, 2019) (collecting cases).

Habeas Corpus; and remove this matter from the docket of the Court.

## I. Relevant Facts

Petitioner is a federal prisoner currently incarcerated in Federal Correctional Institution ("FCI") Beckley in Beaver, West Virginia. *See* Find an Inmate, Federal Bureau of Prisons, BOP Register Number 63208-056, *available at* https://www.bop.gov/inmateloc (last accessed Aug. 18, 2022). He is projected to be released on November 22, 2024. *Id.*

On March 8, 2022, Petitioner filed the instant petition alleging that he "has not receive[d] proper risk reassessments since the First Step Act of 2018" ("FSA"). (ECF No. 1 at 6). Petitioner asks the Court to "issue an injunction to order the [Federal Bureau of Prisons ("BOP")] to provide correct risk assessments to lower his high risk recidivism level to low risk" so that the FSA time credits that he earned can be applied to his sentence. (*Id.* at 7). Petitioner concedes that he did not file an administrative remedy request regarding this issue, but he states that "the grievance process is unavailable due to the customary practice of intimidation here at FCI Beckley [through] no fault of Petitioner." (*Id.* at 2).

The Court ordered Respondent to show cause why the relief sought by Petitioner should not be granted, and Respondent filed a response on May 5, 2022 in which she sought dismissal of the petition. (ECF Nos. 7, 8). Respondent argued that the petition should be dismissed because Petitioner did not exhaust his administrative remedies, and she attached documentation demonstrating that Petitioner did not file any administrative remedy requests in BOP custody. (ECF Nos. 8 at 2-3; 8-1 at 3, 6). Further, Respondent asserted that Petitioner's FSA credits are being assessed in accordance with the FSA and BOP policy; he is earning FSA credits, although they cannot be applied to his sentence at

this time because he is a high recidivism risk; and the extraordinary remedy of injunctive relief is not warranted under these facts. (ECF No. 8 at 3-4).

On May 6, 2022, the undersigned entered an Order allotting Petitioner 60 days from service of Respondent's response to file a reply. Petitioner did not file a reply, and that deadline has expired, making Respondent's motion to dismiss ripe for review.

## II.     Standard of Review

Respondent moves to dismiss Petitioner's habeas petition. (ECF No. 8 at 1). Although Respondent does not identify the rule under which the request for dismissal is brought, given the stage of the proceedings and nature of the arguments presented, it is best understood as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Respondent filed a response concurrently with the request for dismissal, the motion should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Respondent makes two arguments: one asserting a lack of jurisdiction and one claiming that Petitioner fails to state a claim for which relief may be given. A Rule 12(c) motion asserting a lack of jurisdiction applies the same standard of review used for a motion under Rule 12(b)(1), while a failure to state a claim is analyzed using the standard of review for Rule 12(b)(6) motions. *See Humphrey v. Glob. Equity Lending, Inc.*, No. 2:08CV68, 2008 WL 5262769, at *3 (E.D. Va. Dec. 17, 2008).

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend—as in this case— that a pleading "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes

3

that the allegations in the complaint are true and affords the petitioner the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion under Rule 12(b)(6) addresses whether the petition includes sufficient factual allegations to state a claim upon which relief may be granted. A pleading fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2nd Cir. 2007)). In deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the petition, *Erickson v. Pardus*, 551 U.S. 89 (2007), but is not required to accept the legitimacy of legal conclusions. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a petition must plead both a factual and legal basis for relief.

*Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

Similarly, when deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, without converting the motion into a motion for summary judgment. *Id.* The court "may also consider documents attached ... to the motion to dismiss, so long as they are integral to the [petition] and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

#### A. *Exhaustion*

Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d

Cir.2001)). The Court may, in its discretion, waive exhaustion under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010). In addition, exhaustion may be waived when the administrative remedy process is unavailable to the inmate. *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross*, the Supreme Court of the United States explained that the remedy process is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

"[I]n the absence of exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and marking omitted). "While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated, it is the avenue of last resort." *Id*.

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id*. at § 542.13. An inmate can

6

then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

One important aspect of exhaustion is that it creates an administrative record for the court to review. As the BOP is charged with computing an inmate's sentence and has "developed detailed procedures and guidelines for determining credit available to prisoners," *United States v. Wilson*, 503 U.S. 329, 334 (1992), the BOP should have the first opportunity to review its calculation in this case and determine if any errors were made. As a district court recently explained:

> [T]he responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts. *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). … Because the BOP calculates a prisoner's credit towards his federal sentence, a dissatisfied inmate must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence. *Id.* (internal quotations and citation omitted).

*United States v. Usma*, No. 2:19-CR-133-SPC-MRM, 2022 WL 267518, at *1 (M.D. Fla. Jan. 28, 2022) (internal markings omitted).

In this case, Petitioner concedes that he did not exhaust his administrative remedies on the issues presented in his § 2241 petition, and it is clear from the record that he did not file any administrative remedy requests in BOP custody. (ECF Nos. 1 at 2; 8-1 at 3, 6). However, Petitioner claims that the grievance process at FCI Beckley "is unavailable due to the customary practice of intimidation." (ECF No. 1 at 2). Therefore,

the Court must consider whether exhaustion should be waived in this circumstance. As Petitioner is well aware, "[t]he Court cannot disregard the administrative exhaustion requirement based upon unfounded statements." *Parrish v. Young*, No. 5:21-CV-000426, 2022 WL 2818946, at *2 (S.D.W. Va. July 19, 2022). Indeed, Petitioner previously asserted the same excuse for failing to exhaust a very similar claim, and the Court rejected it.[2]

In July 2021, Petitioner filed a § 2241 petition asserting that the BOP failed to calculate his FSA time credits. *Parrish v. Young*, No. 5:21-cv-000426 (S.D.W. Va. July 30, 2021), ECF No. 1 at 6. The Court dismissed his claim on the basis that Petitioner did not exhaust his administrative remedies and the action was premature because the FSA was not fully in effect. *Parrish*, 2022 WL 2818946, at *2. In that case, Petitioner argued that the "administrative remedy process was unavailable to him due to staff intimidation, threats, and excessive use of force on inmates attempting to utilize the grievance process." *Id*. However, the Court noted that Petitioner only "included conclusory statements of staff preventing his utilization of grievance procedures, yet he failed to provide specific information to demonstrate their plausibility." *Id*.

Likewise, in this case, the Court cannot disregard the exhaustion requirement simply because Petitioner stated without any supporting facts that the grievance procedure is unavailable due to staff intimidation. Petitioner does not elaborate at all on his assertion that he was prevented in some way from filing an administrative remedy request. "The inmate requesting an exhaustion waiver on the basis of unavailability bears

---

[2] To any extent that it applies, Respondent did not assert that this claim is barred by the doctrine of *res judicata*, which is an affirmative defense. "Claim preclusion (res judicata), as Rule 8(c) of the Federal Rules of Civil Procedure makes clear, is an affirmative defense." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998).

the burden of establishing by a preponderance of the evidence that "he was prevented, through no fault of his own, from availing himself of that procedure." *Nguyen v. Young*, No. 5:21-CV-00676, 2022 WL 2383610, at *3 (S.D.W. Va. May 17, 2022), *report and recommendation adopted,* 2022 WL 2375907 (S.D.W. Va. June 30, 2022) (citation omitted). That "burden of proof requires more than "naked assertions without any specificity or evidentiary support." *Id.* Here, Petitioner does not offer a single fact to support his legal conclusion that the administrative remedy procedure was unavailable to him.

For those reasons, the undersigned **FINDS** that Petitioner's claim regarding FSA credits is unexhausted, and the exhaustion requirements should not be waived.

### B. Merits

Furthermore, even if the Court waived Petitioner's failure to exhaust his administrative remedies, he fails to state a plausible claim for habeas relief. Petitioner asks the Court to order the BOP to "correct" his PATTERN score to reflect that he is a low recidivism risk so that his FSA credits can be applied to his sentence. (ECF No. 1 at 7). The FSA, enacted on December 21, 2018, allows eligible federal prisoners to earn time credits for successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR ELH-13-476, 2021 WL 5084691,

9

at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)).

PATTERN calculates two separate scores: a person's risk of reoffending in general and his or her risk of reoffending with a crime of violence. *See* https://apps.urban.org/features/risk-assessment. For males, PATTERN includes 15 "risk items," such as an inmate's current age; whether he has a Walsh conviction and/or committed a violent offense; and his criminal history points; history of escapes and/or violence; education score, such as whether the inmate is enrolled in a GED program or has the equivalent of a high school diploma; completion of drug treatment programs; all incident reports in the past 120 months, whether any were serious, and time period since last incident report; whether the inmate agreed to participate in the financial responsibility program; and the number of eligible activities and work programs the inmate completed. Male Pattern Risk Scoring, BOP, *available at* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 (last accessed Aug. 2, 2022). Based on the rubric in each category, the inmate is given 15 general and violent scores, which are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. *Id.*; *see* https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3.

The BOP must reassess an inmate's PATTERN score annually, at a minimum, if the inmate successfully participates in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(5). As in this case, if the inmate is determined to be a medium or high risk of recidivating and has less than five years until his projected release date, the BOP must perform "more frequent risk reassessments." *Id*. According to the declaration of Tanner Lilly, a BOP Case Manager that is employed at FCI Beckley, the BOP reassesses inmates risk levels at program review meetings every six

months for inmates more than one year from being released and every three months for inmates within one year of release. (ECF No. 8-1 at 2).

An inmate's FSA time credits can be applied to his or her sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law in 2018. 18 U.S.C. § 3632(d)(4)(A). However, FSA time credits can only be applied to a prisoner's sentence if the prisoner meets certain criteria, including that he or she has "[s]hown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment." 18 U.S.C. § 3624(g).

In this case, Petitioner is not projected to be released for over two years. He is eligible for, and he has earned, FSA time credits. (ECF No. 8-1 at 11-13, 16). Therefore, given the fact that Petitioner is within five years of release and has successfully participated in FSA programs and activities, the BOP is required to assess his PATTERN score more frequently than once per year. 18 U.S.C. § 3632(d)(5). According to BOP policy, Petitioner's PATTERN score should be reassessed every six months at his program review meetings. (ECF No. 8-1 at 2). Once he is within one year of being released, those meetings should occur every three months. (*Id.*).

The records attached to Respondent's response and motion to dismiss demonstrate that Petitioner's most recent PATTERN scores were assessed at six month intervals. He was determined to be a high recidivism risk on November 3, 2021 and April 29, 2022, and his next assessment is scheduled in October 2022. (ECF No. 8-1 at 3, 8). Petitioner asserts in a conclusory fashion that he has not received "proper risk

11

reassessments" and should be determined to be a low risk of recidivism. (ECF No. 1 at 6, 7). However, Petitioner does not articulate any facts to support those claims. Petitioner does not show that the BOP erred in performing its delegated function of computing his PATTERN score and assessing that he is a high recidivism risk. Furthermore, he does not dispute that the reviews were performed at the frequency demanded by the FSA and BOP policy. Unsubstantiated speculative claims such as those presented in this petition fail to state a viable claim for habeas relief.

Therefore, the undersigned **FINDS** that Petitioner does not assert any set of facts to support a claim under § 2241, and the petition must be dismissed for this additional reason.

### IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Respondent's request for dismissal, (ECF No. 8), be **GRANTED**; the Petition for a Writ of Habeas Corpus, (ECF No. 1), be **DISMISSED**; and this matter be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** August 18, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge