IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

MAURICE PARRISH,

    Petitioner,

v.                                     CIVIL ACTION NO. 5:22-cv-00134

KATINA HECKARD, Warden,

    Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending are (1) Petitioner Maurice Parrish's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. 1], filed March 11, 2022, and (2) Respondent Katina Heckard's request for dismissal [Doc. 8], filed May 5, 2022.

**I.**

This action was previously referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission of proposed findings and a recommendation ("PF&R"). Magistrate Judge Eifert filed her PF&R on August 18, 2022, recommending that the Court grant Ms. Heckard's request for dismissal, dismiss Mr. Parrish's § 2241 Petition for a Writ of Habeas Corpus, and remove this matter from the docket. Mr. Parrish timely objected to the PF&R on September 2, 2022. [Doc. 11].

II.

The Court is required "to make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court need not, however, conduct de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Mr. Parrish first appears to object to the Magistrate Judge's conclusion that he failed to adduce facts supporting his assertion that the administrative exhaustion requirement should be waived due to the purported customary practice of intimidation at FCI Beckley. Specifically, Mr. Parrish asserts "[d]ue to a [*sic*] numerous e-mails and cop-outs over the change of authorities/warden" it is "impossible" to comply with the administrative remedy process.¹ [Doc 11 at 1]. As correctly explained by the Magistrate Judge, however, to demonstrate unavailability of a grievance procedure, an inmate "must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)). Mr. Parrish has again failed to sufficiently explain how he was prohibited, if at all, from filing a grievance. Inasmuch as Mr. Parrish has not adduced facts demonstrating unavailability of the grievance procedure, the Court finds no error in the Magistrate Judge's conclusion and overrules Mr.

---

¹ Mr. Parrish clarifies in his objections that this "abuse of authority does not pertain to the new warden, (Katina Heckard)" and avers he has since filed a BP–8 form with a case manager but has yet to receive a response. [Doc. 11 at 1]. Mr. Parrish thus requests the Court accept his amended § 2241 petition attached to his objections, which reflects his submission of the BP–8 form. Even assuming Mr. Parrish has now properly exhausted his administrative remedies, the substantive claims in his amended petition mirror those contained in his current petition and, as explained *infra*, ultimately fail on the merits. Accordingly, the Court denies Mr. Parrish's request to amend his § 2241 petition inasmuch as the same would be futile.

2

Parrish's objection. Nonetheless, even assuming Mr. Parrish was prohibited, through no fault of his own, from utilizing the administrative remedy process, his substantive claims yet fail as thoroughly explained by the Magistrate Judge and in the Court's analysis below.

   Mr. Parrish next objects to the Magistrate Judge's conclusion that he is currently ineligible to apply his earned time credits toward his sentence under the First Step Act ("FSA"). Specifically, Mr. Parrish asserts "[t]here is nowhere in the (FSA–ETC of 2018), that states that [he] must be a low/minimum to receive his earned time credits, in fact, it says the opposite." [ECF 11 at 2]. He further avers "[t]hat as long as a prisoner is trying to lower his [evidence-based recidivism risk] (EBRR score) he is able to apply his credits." *Id.* Mr. Parrish thus requests his earned time credit be applied, and he be placed into a halfway house for the remainder of his sentence. In support, Mr. Parrish relies on 18 U.S.C. § 3624(g)(1)(B), which pertinently provides an inmate is eligible for prerelease custody when he has "shown through the periodic risk assessments a demonstrated risk recidivism reduction" during his term of incarceration.

   Mr. Parrish fails to recognize, however, that § 3624(g)(1)(B) is merely one of several requirements an inmate must satisfy to be eligible for prerelease custody. *See* 18 U.S.C. §§ 3624(g)(1)(A)-(D). Indeed, a prisoner is only eligible for prerelease custody, such as halfway house placement, where he "has been determined under the [risk and needs assessment] System to be a minimum or low risk to recidivate pursuant to [his] last 2 reassessments" or "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison" after a determination that he would not pose a societal danger, has made a good faith effort to lower his recidivism through program and activity participation, and is unlikely to recidivate. *Id.* § 3624(g)(1)(D)(i). Inasmuch as Mr. Parrish has been determined to be a high recidivism risk under his last two reassessments, and the record is devoid of any evidence that a petition for prelease

custody has been approved by the warden, Mr. Parrish is currently ineligible for prerelease custody. Accordingly, the Court finds no error in the Magistrate Judge's conclusion and overrules Mr. Parrish's objection.

Lastly, Mr. Parrish objects to the Magistrate Judge's conclusion that he has not shown the Bureau of Prisons ("BOP") erred in performing its delegated function of computing his recidivism risk. Specifically, Mr. Parrish asserts he "has been a high for over two consecutive terms even though he has been programming nonstop up until present while maintaining clear conduct." [ECF 11 at 2]. As the Magistrate Judge correctly explained, however, successful completion of eligible programs, the number and seriousness of an inmate's incident reports, and the time period since the inmate's last incident report are just three of fifteen factors the BOP considers when assessing a male inmate's recidivism risk. *See* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 (last accessed Apr. 18, 2023). Factors herein absent from the record, such as Mr. Parrish's criminal history points and history of violence, would significantly impact his recidivism risk score. *See id.*

Simply put, the mere fact that Mr. Parrish has successfully completed several programs and maintained clear conduct does not establish his recidivism risk has been improperly calculated. As Magistrate Judge Eifert correctly concluded, Mr. Parrish does not articulate facts to support his reassessments have been improper or that his recidivism risk level should be lowered. The Court thus overrules Mr. Parrish's objection.

**III.**

Based on the foregoing discussion, the Court **OVERRULES** Mr. Parrish's Objections [**Doc. 11**]; **ADOPTS** the Magistrate Judge's PF&R [**Doc. 10**]; **GRANTS** Ms. Heckard's request for dismissal [**Doc. 8**]; **DISMISSES** Mr. Parrish's Petition for a Writ of Habeas Corpus [**Doc. 1**]; and **REMOVES** this matter from the docket.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unpresented party.

ENTER: September 5, 2023



Frank W. Volk
United States District Judge